WARFIELD, COUNTY JUDGE, *v.* CHOTARD, COUNTY TREASURER.

4-6499                                          153 S. W. 2d 168

Opinion delivered July 14, 1941.

*J. R. Parker,* for appellant.

*John M. Golden,* for appellee.

MEHAFFY, J.   This action was instituted by Carneal Warfield, as county judge of Chicot county, Arkansas, for a writ of mandamus to compel R. C. Chotard, treasurer of Chicot county, to pay a warrant in the sum of $90.57 for additional salary as county judge. The salary fixed by an act initiated in Chicot county is $2,500. The county judge claims that he is entitled to salary under act 125 of the Acts of 1941, wherein the salary is fixed at $3,750.

The county treasurer entered his appearance and filed a demurrer to the complaint. The court sustained the demurrer, dismissed plaintiff's complaint, and the case is here on appeal.

In 1940, Chicot county initiated an act entitled: An act to fix the salaries and expenses of the county officers of Chicot county, Arkansas, and to fix the manner in which such compensations and salaries shall be paid, to reduce the cost of county government, and for other purposes.

This initiated act became effective January 1, 1941. It not only fixes the salary of the county judge, but it provides that he shall perform certain duties, enumerating them. This act also prescribes the duties and fixes the salaries of the circuit clerk, county clerk, the sheriff and collector, the tax assessor, and the county treasurer.

The legislature of 1941 passed act 125, the title of which is: An act to amend § 1 of act 97 of the Acts of 1929, as amended by act 133 of the Acts of 1933 and act 409 of the Acts of 1939.

The first section of said act 125 reads as follows: ''That § 1 of act 97 of the General Assembly of the State of Arkansas, approved March 7, 1929, as amended by act 133 of the Acts of 1933 and by act 409 of the Acts of 1939, be amended so as to read as follows:''

It then provides that the annual salary of the county and probate judge in each of the several counties of the state shall be as follows, and then names the amount of salary for each county judge in the state. There are seventy-five counties in this state, and yet act 125 did not undertake to change the salary in but seven counties. There was no change at all made in sixty-eight counties. It names Chicot county and fixes the salary at $3,750.

The initiated act of Chicot county is not mentioned either in the title or in the act 125, and the question, therefore, is whether act 125 impliedly repealed the initiated act.

Act 125 does not purport to repeal any act, except it states in § 2: ''All laws and parts of laws in conflict with the provisions of this act are hereby repealed.''

That is the usual clause added to acts passed by the legislature, but since the initiated act had just been adopted by Chicot county, and since said act was not

mentioned in act 125, we think it plain that the legislature did not intend to repeal the initiated act. It simply, as the title shows, intended to amend § 1 of act 97 of 1929, as amended by act 133 of the Acts of 1933, and by act 409 of the Acts of 1939.

The legislature could not amend the initiated act. Amendment 14 to the Constitution of the State of Arkansas reads: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

The late Chief Justice McCulloch, speaking for the court, said: "While the title of the act is not controlling, it may properly be looked to, in case of doubt, for the purpose of ascertaining the true legislative intent. 2 Lewis' Sutherland on Construction of Stat. § 339; 26 Am. & Eng. Enc. Law, pp. 628, 629." *Western Union Tel. Co.* v. *State*, 82 Ark. 302, 101 S. W. 745; *Payne* v. *State, use city of Booneville*, 124 Ark. 20, 186 S. W. 612; *Oliver* v. *So. Trust Co.*, 138 Ark. 381, 212 S. W. 77; *Nixon* v. *Allen*, 150 Ark. 244, 234 S. W. 45; *Huff* v. *Udey*, 173 Ark. 464, 292 S. W. 693; *Conway* v. *Summers*, 176 Ark. 796, 4 S. W. 2d 19.

It seems clear to us from the title of the act that there was no intention to amend or repeal the initiated act. Moreover, § 1 of the act itself does not mention the initiated act.

Appellant contends that when act 409 of 1939 was passed, fixing the salaries of all the county judges in the state, it was the law applicable to Chicot county. Act 125 did not make any change in the salaries of the county judges of 68 counties.

The provision of Amendment No. 7 applying to local legislation reads as follows:

"The initiative and referendum power of the people are hereby further reserved to the local voters of each municipality and county as to all local, special and municipal legislation of every character in and for their respective municipalities and counties, but no local legislation shall be enacted contrary to the Constitution or any general law of the State, and any general law shall have

the effect of repealing any local legislation which is in conflict therewith.''

The people not only adopted Amendment No. 7, but this court said in the case of *Dozier* v. *Ragsdale*, 186 Ark. 655, 55 S. W. 2d 779: ''It will be remembered that the amendment construed by this court in the case of *Hodges* v. *Dawdy, supra,* was adopted in 1910. Thereafter the present amendment was adopted, and, in submitting the present amendment to be voted upon, the provision for the Initiative and Referendum Amendment as to counties was in a separate paragraph, in which the amendment was not mentioned. It simply provided for local, special and municipal legislation of every character in and for their respective municipalities and counties. The fact that the people adopted this provision a second time, and having written it in such plain language that it cannot be misunderstood by any one, shows clearly that they intended to reserve to themselves the right to pass all local laws affecting the counties.''

In the case of *Dew* v. *Ashley County*, 199 Ark. 361, 133 S. W. 2d 652, the court, after stating that the trial court had given a statement, historical in effect, of all this class of legislation, and a somewhat careful analysis thereof, said: ''After a complete re-examination and study of the subject we cannot think there could be any benefit to the public or to any individual interested in this litigation to re-examine and extend unduly a discussion of local salary acts. In this case the assessor has been paid his full salary. If under the Constitution salaries of county officials are purely local matters and may be settled and determined by the people themselves, certainly when salaries shall have been so determined and fixed and shall have been paid, no officer may properly claim more than the amount so determined and the courts do not have power to amend the law.''

This court recently said: ''Another reason not less cogent is that Amendment No. 7 permits the exercise of the power reserved to the people to control to some extent at least the policies of the state, but more particularly of counties and municipalities as distinguished from the exercise of similar power by the legislature,

and, since that residuum of power remains in the electors, their acts should not be thwarted by strict or technical construction." *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. 2d 72; *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. 2d 476.

Another reason why it is apparent that the legislature did not intend to amend or repeal this initiated act is that the initiated act fixes the salaries of all county officers, and it is expressly stated that the purpose is to "reduce the cost of county government." Can it be believed that the legislature would intentionally increase the salary of the county judge of Chicot county when the express purpose of the initiated act was to reduce the cost of county government? Of course, it could not amend the act under the Constitution, and yet it is perfectly clear that it intended to amend certain acts. If it had intended to repeal the initiated act, it would certainly have said so. But when the Initiative and Referendum Amendment and the acts mentioned and the initiated act are construed together, the conclusion that the legislature did not intend to amend or repeal the initiated act, is irresistible.

"In the construction of amendments to statutes, the body enacting the amendment will be presumed to have had in mind existing statutory provisions and their judicial construction, touching the subject dealt with. The amendatory and the original statute are to be read together in seeking to discover the legislative will and purpose, and, if they are fairly susceptible to two constructions, one of which gives effect to the amendatory act, while the other will defeat it, the former construction should be adopted." *LaFargue* v. *Waggoner,* 189 Ark. 757, 75 S. W. 2d 235, 25 R. C. L. 1067.

"Statutes must have a rational interpretation to be collected, not only from the words used, but from the policy which may be reasonably supposed to have dictated the enactment, and the interpretation should be rigorous or liberal, depending upon the interests with which it deals." *LaFargue* v. *Waggoner, supra,* 25 R. C. L. 1077.

We think it would amount to a charge of bad faith on the part of members of the legislature (and this should not be done if it can be avoided) to hold that the legislature intended to repeal the initiated act and yet put nothing into the title or the act to indicate this intention, so that neither the people of Chicot county nor anyone else would have notice of its intention.

The Supreme Court of the United States, in discussing the question of the invasion of constitutional rights and a breach of faith on the part of the United States, said: "We are bound, if possible, so to construe the law as to lay it open to neither of these objections. *Broughton* v. *Pensacola,* 93 U. S. 266, 23 L. Ed. 896; *Red Rock* v. *Henry,* 106 U. S. 596, 1 S. Ct. 434, 27 L. Ed. 251; *Hobbs* v. *McLean,* 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; decided at the present term, and cases there cited; *United States* v. *Coombs,* 12 Pet. 72, 9 L. Ed. 1004. The construction contended for by appellee preserves the good faith of the government, and frees the act from the imputation of impairing rights secured by the Constitution of the United States." *U. S.* v. *Central Pac. RR. Co.,* 118 U. S. 235, 6 S. Ct. 1038, 30 L. Ed. 173.

The decree is affirmed.

SMITH and McHANEY, JJ., dissent. The Chief Justice and Mr. Justice HOLT concur in the result attending the decision in so far as it holds that the initiated county salary act is still in effect, but do not agree with the reasoning by which that result was reached.

SMITH, J. (dissenting). The statement is contained in the opinion of the court below, which we assume to be true, that act 125 of the Acts of 1941, reduces the salary of three county judges and increases the salary of four others. This suggests the query whether, under the majority opinion, any part of act 125 is valid. If it may not be applied to Chicot county, may it be applied to any other? Are the provisions of the act severable to the extent that it may be constitutional in part and unconstitutional in part?

Act 97 of the Acts of 1929 undertook to fix the salaries of all county judges in this state. Was it invalid

because it conflicted with local salary acts? This act of 1929 was held valid in the case of *Lawhorn* v. *Johnson,* 196 Ark. 991, 120 S. W. 2d 720, and it was so held notwithstanding the fact that it provided that the quorum courts of the respective counties might authorize the payment of a part of the salary, not exceeding one-half, out of the county road fund or the county highway fund. It was held in that case that the provision that in some counties the salary is fixed with a view to cover expenses of the office, while in others it was provided that the quorum courts should make appropriations for the expenses of county judges, did not make it violative of amendment No. 11, which prohibits local legislation.

That opinion, while recognizing the rights of counties, by local legislation to fix salaries of county officers, asserts also the authority of the General Assembly, by a general law, to fix such salaries. It was there said: "The authority for the Legislature to pass such legislation is specifically granted by the Constitution, § 4, art. 16, which reads: 'The General Assembly shall fix the salaries and fees of all officers of the state,' etc."

In other words, authority exists to fix salaries of county officers by a general law, such as act 97 of the Acts of 1929 or act 125 of the Acts of 1941. On the other hand, the electors of the counties may enact legislation fixing salaries of local officers. There are two governmental agencies having authority to fix salaries, and each, acting within the scope of its power, has the right to repeal the action of the other, and the last appropriate enactment is the law.

The General Assembly, at its 1939 session, by act 409, fixed the salaries of all county judges, including the salary of the county judge of Chicot county. If this act is valid, it must necessarily repeal local salary acts to the extent that they are in conflict. Query: Does the majority opinion invalidate act 409 of the Acts of 1939?

It occurs to me that the majority opinion will cause great confusion, and will do so unnecessarily. There would be no confusion if we followed the opinion in the case of *Lawhorn* v. *Johnson, supra.* If we did so, the state

of the law would be just this. Act 97 of the Acts of 1929 was a valid law, as held in Lawhorn v. Johnson, it being a general law. Act 409 of the Acts of 1939, a general law, was also valid, and the salary of the county judge of Chicot county was $3,750, as fixed by that act, and continued so to be until repealed by initiated act No. 1 of Chicot county, when it was fixed at $2,500. The salary of that officer continued to be $2,500 until the passage of act 125 of the Acts of 1941, a general law, when it was changed back to $3,750 per annum.

The confusion arises out of the denial of the right of one of these governmental agencies to exercise its power to fix salaries, while permitting the exercise of that power by the other.

The Constitution has not denied the General Assembly the power to repeal a local act. On the contrary, amendment No. 7—the I. & R. amendment—under which counties derive the power to enact local legislation, provides that ''No measure approved by a vote of the people shall be amended or repealed by the General Assembly, or by any city council, except upon a yea and nay vote, on roll call, of two-thirds of all the members elected to each House of the General Assembly, or of the city council, as the case may be.''

It is not questioned that act 125 of the Acts of 1941, was passed by a two-thirds vote of all the members elected to each House of the General Assembly, and being the last expression of the governmental agency having power to legislate, it should be given effect.

It may be unfortunate, it may even appear unseemly, that this conflicting legislation should be enacted; but this results from the fact that two agencies have that power, and we may consider only the question of power, and when one agency acts, its action should be given effect until the other agency takes action to the contrary.

It is my opinion that act 125 of the Acts of 1941 is valid legislation, and being the last expression of an agency having power to act, its provisions should be enforced. Section 2 of act 125 provides that ''All laws and parts of laws in conflict with the provisions of this

act are hereby repealed," and the conflict between the initiated act and act 125 is, of course, apparent. Both cannot be the law as affects Chicot county.

I am authorized to say that Mr. Justice McHANEY concurs in the views here expressed.