The Honorable William P. Mills, Chairman Joint Interim Committee on Agriculture Economic Development State Capitol, Room 315 Little Rock, AR 72201
Dear Representative Mills:
This is in response to your request for an opinion on the following questions:
 1. Does the Arkansas General Assembly have the authority to stipulate where portions of the hunting license fees they raised go?
 2. Is the Game and Fish Commission correctly spending the license fee enacted by Act 430 of 1977?
 3. Under Amendment 35, what authority does the General Assembly have over the Game and Fish Commission?
 4. In making biennial appropriations to the Game and Fish Commission, does the Legislature have the authority to designate a portion to be used for a specific purpose, such as the control and eradication of beaver?
It is my opinion, in response to your first question, that any legislative effort to stipulate the use of monies credited to the Game Protection Fund, which include hunting license fees, would be closely scrutinized by the courts. Legislation in this regard would be subject to the contention that the Legislature is attempting to exercise powers pertaining to a subject matter which was not expressly reserved in the Legislature by Amendment35 to the Arkansas Constitution. See Farris v. Arkansas StateGame Fish Comm'n, 228 Ark. 776, 785, 310 S.W.2d 231 (1958). As noted by the Arkansas Supreme Court in the case of Chaffin v.Arkansas Game Fish Comm'n, 296 Ark. 431, 757 S.W.2d 950
(1988), a line of cases recognizes that Amendment 35 created the Game and Fish Commission ("Commission") as an independent constitutional agency with broad discretion in carrying out its power to control, manage, restore, conserve, and regulate the birds, fish, game and wildlife resources of the state. Chaffin,296 Ark. at 436, citing Arkansas State Game Fish Comm'n v.Stanley, 260 Ark. 176, 538 S.W.2d 533 (1976), Farris, supra,
and W.R. Wrape Stave Co. v. Arkansas State Game and FishComm'n, 215 Ark. 229, 219 S.W.2d 948 (1949). The court inChaffin found, with regard to the allocation of resources in connection with the game and fish magazine, that the Legislature was attempting to substitute its judgment in that instance for that of the Commission on a question of resource management, and that this is "something [the Legislature] cannot do."296 Ark. at 438.
Thus, if the Legislature would, by virtue of stipulating the use of the fees, in essence be substituting its judgment for that of the Commission on a question of management of resources, a successful challenge may be mounted. A review of the cases in this area compels the conclusion that a stipulation regarding the use of Game Protection Fund monies would be constitutionally suspect.
With regard, specifically, to Act 430 of 1977 (codified at A.C.A. § 15-42-125), consideration must, in my opinion, be given to the case of Arkansas Game and Fish Comm'n v. Edgmon, 218 Ark. 207,235 S.W.2d 554 (1951). Subsection (a) of § 15-42-125 states as follows:
 Twenty-five cents (25¢) of the additional fee derived from the sale of each annual resident hunting license shall be set aside by the Arkansas State Game and Fish Commission in a special account within the Game Protection Fund to be known as the "Beaver Control and Eradication Account" to be used solely and exclusively for the control and eradication of beavers in this state which are destroying private property. [Emphasis added.]
The question arises whether this designated use of Game Protection Fund proceeds would withstand scrutiny under Amendment 35. As noted by the court in W.R. Wrape Stave Co., supra,
"[a]lthough appropriations must come from the General Assembly, money received from sources mentioned in the Amendment is not available — even with express legislative approval — for any uses other than those expressed or necessarily implied. . . .215 Ark. at 234.
This principle formed part of the basis for the court's rejection of legislation at issue in the Edgmon case, supra, which directed disbursement of money from the Game Protection Fund to pay bounties for the killing of wolves. 218 Ark. at 208-209. The emergency clause of the act stated that farmers are suffering irreparable damage "from wolves destroying cattle and other live stock." Id. at 208. In its reversal of the chancellor's decision upholding the statute, the court first cited the statement in W.R. Wrape Stave Co., supra, regarding the purpose of Amendment 35, i.e., "to vest in the Commission power to control, manage, restore, conserve, and regulate the State's bird, fish, game, and wild life resources, and that funds arising from all sources were to be spent by the Commission for the purposes mentioned." 218 Ark. at 209. The court then noted the principle derived from Wrape Stave concerning the limitation on the use of Game Protection Fund money for those uses "expressed or necessarily implied" in Amendment 35. Id. It concluded by noting:
 Appellant is correct in saying that the General Assembly cannot disburse Game and Fish funds. It should, as the Amendment contemplates, make appropriations to carry into effect the will of the people who adopted the instrument as a part of our Constitution; but in doing this the fundamental intent must be kept in sight.
Id. It is thus apparent that the court's rejection of the required use of game and fish funds to pay bounties on wolves was based in part on the precept that this did not fall within the scope of Amendment 35.[1]
It is my opinion that a similar argument might be fashioned against the enforceability of Act 430 of 1977, i.e., that the control and eradication of beaver falls outside the express or implied scope of the purposes enumerated in Amendment 35.
I cannot provide a conclusive answer to your second question concerning the Commission's use of the license fee because I do not know how that money is currently being used. You state in your request that the Commission has never complied with Act 430 of 1977. This fact is not, however, in my opinion, necessarily conclusive. As outlined above, a legislative stipulation of the use of Game Protection Fund monies would generally be constitutionally suspect; and the specific stipulation in Act 430 is questionable under Arkansas Game and Fish Comm'n v. Edgmon,supra. Additionally, consideration must be given to the following statement in Farris, supra:
 The Commission is a trustee for the people of this State, charged with the duty of conserving the wild life resources. Its powers are not unlimited, but until such time as it is more clearly shown that the Commission has abused its broad discretionary powers in matters of conservation, then it cannot be contended that the Commission has exceeded the limits of its powers.
228 Ark. at 782.
With regard to your third question, involving the General Assembly's authority over the Commission, the Arkansas Supreme Court has held that:
 "[t]he only power reserved to the Legislature is the power to appropriate moneys for the use of the Game and Fish Commission from the Game Protection Fund, and the power to increase the resident hunting and fishing license from $1.50 annually, to a greater amount. . . . [Amendment 35] clearly divests the Legislature of all of its powers to conserve the wild life resources of this state, except those powers expressly reserved therein, being the power to make appropriations and to increase the annual resident hunting and fishing licenses.[2]
228 Ark. at 780. See also Fowler v. State, 283 Ark. 325,326, 676 S.W.2d 725 (1984) ("The Legislature is divested of powers to regulate fish and wildlife except for making appropriations and to increase annual resident hunting and fishing licenses.")
Amendment 35 thus clearly preserves the Legislature's power to appropriate. While this power must be recognized, the exercise of the power will, in my opinion, be subject to close scrutiny under Amendment 35. The Arkansas Supreme Court has indicated that the Legislature cannot, through an appropriation measure, attempt to manage the operations of the Commission. See Chaffin,supra.
The responses to questions 1 and 3 set forth the issues that emerge, and the analysis to be applied in addressing your final question. A case by case review of any such designated use would be necessary. As for the control and eradication of beaver, as previously indicated, it is my opinion that this designated use is constitutionally suspect.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The court also rejected the contention that the Legislature could, by a two-thirds vote, change an initiated constitutional amendment. Id. at 209-211.
[2] Section 7 of Amendment 35 contains a provision for submission of salaries and expenditures to the Legislature.