Mr. Michael J. Wasserman Arkansas Resorts Hotels, Inc. 391 CR 214 Gainesville, TX 76240
Dear Mr. Wasserman:
I am writing in response to your request for certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You previously submitted a ballot title and popular name for a similar measure, which I rejected due to ambiguities in the text of the measure. See Ark. Op. Att'y Gen. No. 2006-009. You have made revisions in the text of your measure and now resubmit your proposed popular name and ballot title as follows:
Popular Name
 AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO ALLOW ARKANSAS RESORTS HOTELS, INC. TO OWN AND OPERATE SEVEN CASINO GAMING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION
 Ballot Title
 AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 2) IMMEDIATELY AUTHORIZE SEVEN CASINO GAMING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS RESORTS HOTELS, INC." (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION SO THAT THE STATE LOTTERY MAY BEGIN AT THE EARLIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS RESORTS HOTELS, INC; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING THAT THE GROSS GAMING REVENUE (AS DEFINED) OF A CASINO SHALL BE SUBJECT TO THE GROSS RECEIPTS TAX LEVIED BY THE TAXING JURISDICTIONS WHERE A CASINO IS LOCATED AT THE SAME RATE AS FOR BUSINESSES GENERALLY, AND OF THE AMOUNTS OF SAID TAX PAID TO THE STATE THEY SHALL BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON PRESCRIPTION MEDICATIONS AND ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 15% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, GROSS GAMING REVENUES, OR INCOME OF ARKANSAS RESORTS HOTELS, INC., DERIVED FROM OR USED IN CASINO GAMING WHICH ARE NOT LEVIED AGAINST BUSINESSES GENERALLY; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, ALLOCATED AND ADMINISTERED BY THE DEPARTMENT OF EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; AND 2) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere, 282 Ark. 463,466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Since your last submission, you have added a new sentence to Section 12.1 of your measure stating that "The power of the General Assembly to amend or repeal this Amendment pursuant to The Arkansas Constitution, Article 5, Section 1, regarding Amendment and Repeal shall not be applicable to this Amendment." This statement is impossible to summarize in a certified ballot title for your measure because it is based upon an incorrect assumption of law. The pertinent section of Arkansas Constitution, Article 5, § 1 (the codification of Amendment 7), to which this passage refers states that: "No measure approved by a vote of the people shall be amended or repealed by the General Assembly . . . except upon a yea and nay vote on roll call of two-thirds of all the members elected to each house of the General Assembly. . . ." Article 5, § 1 ("General Provisions") ("Amendment and Repeal"). The definition of "measure" in Article 5, § 1 includes a "constitutional amendment." Article 5, § 1 ("General Provisions") ("Definition"). Nonetheless, the Arkansas Supreme Court has held that this portion of the Arkansas Constitution does not give the General Assembly the power to amend or repeal constitutional amendments adopted by the people. See Arkansas Game and Fish Commission v. Edgmon, 218 Ark. 207, 235 S.W.2d 554 (1951) and Op. Att'y. Gen. 2001-025. As a consequence, the new language in Section 12.1 of your measure is misleading. Although you have not summarized this provision of your measure in your proposed ballot title, the language, if it contained a correct assumption of law, would merit inclusion in a certified ballot title for your measure. Because the language is incorrect, however, it may lead to confusion and I am unable to substitute and certify a ballot title for your measure on this point.
 2. In addition, although you have made several changes to the text of your measure since your last submission (some in response to the items discussed in my previous rejection in Op. Att'y. Gen. 2006-009), you have not made any corresponding changes in your proposed ballot title. As a consequence your proposed ballot title is misleading in numerous respects, failing to take into account the changes you have made. For example, your ballot title still refers to an "immediate" authorization of casinos and states that your amendment is "effective upon passage" although the text of your current submission changes and delays the effective date of your measure. See Section 13.1 Numerous other changes, deletions or additions to your text are not reflected in your resubmitted ballot title. In addition, your ballot title contains incorrect summarizations of portions of your amendment, even as originally submitted. For example, your proposed ballot title states that the casinos may be audited by the Arkansas Gaming Commission for the "sole purpose of insuring that casino taxes are paid, but shall not otherwise be regulated by the Arkansas Gaming Commission. . . ." This summarization may reflect your intention as to the effect of the measure, or your attempt to adequately inform the voters of the measure's impact, but the actual language of your measure in this regard is not nearly so restricted, stating only that the Commission" shall audit the operations of the Casinos once per annum to insure that all Casino taxes are paid." Section 4.1 There is no reference in the text to this function being the "sole" power of the Commission and no express denial of other regulatory power. Similarly, your proposed ballot title summarizes your measure as "prohibiting persons under the age of 21 from purchasing lottery tickets or participating in casino gaming," whereas the text of your measure contains only a prohibition against such persons participating in casino gaming. As you may be aware, the Arkansas Supreme Court will apply a fairly rigorous standard to determine whether a proposed ballot title is sufficient. The title must not be misleading or incorrect. It must be well-organized, concise and coherent so as not to mislead or confuse the voting public. As a consequence, numerous changes to your ballot title will be necessary before certification.
 3. Finally, your clarification of several provisions of your text has brought some additional ambiguities into sharper relief. These issues pertain to the power of the General Assembly. For example, although you have clarified some of the provisions regarding the eligibility of students for grants from the Arkansas Educational Trust Fund, and although your measure states that the "trust funds will be used to provide as many grants as possible to qualified high school graduates" it remains somewhat unclear what entity will have authority to set the criteria for the grants. Your measure states that the trust funds will be held outside the state treasury and "allocated and administered" by the Arkansas Department of Education." Section 3.1. Although this language might be seen as evidencing an intention that the Department of Education be solely responsible for the distribution of the funds and the criteria for their distribution, your measure is not clear as to whether the General Assembly retains its authority to legislate concerning the grants and the trust funds. You have stated clearly that the General Assembly shall not enact any legislation regarding casino gaming. Section 12. 1. Some of the revenues in the Trust Fund arise from casino gaming. Section 6.2(b). This prohibition, however, would not appear to prohibit legislation concerning the student grants or the trust funds, even though your measure prominently mentions the Department of Education as having power over the funds. This is true because the General Assembly does not need any conferral of power in your measure in order to retain its law-making power over the subject matter. See in this regard,
Op. Att'y. Gen. 2005-089 at 6 (quoting precedent to the effect that: "It is generally held . . . as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution. Id.)" If it is your intention to deny the General Assembly power over the Arkansas Educational Trust Fund and its distribution, this fact must be expressly stated or necessarily implied or the General Assembly will retain that power. I cannot determine from the current language whether a "necessary implication" exists. The issue of what entity will have power to set the criteria for the scholarships and to set policy regarding other matters involving the distribution of the Trust funds, such as whether the moneys allocated for pre-kindergarten and tutorial programs under § 3.7 may be allocated to only public or also private entities, or who will determine the amounts of the annual grants under § 3.5, may give the voters serious ground for reflection. As a consequence, these points must be clear in your measure and in a ballot title summarizing it.
 A similar issue pertains to the Arkansas Gaming Commission. The General Assembly is to set the terms and qualifications of the Commissioners, has some role in the appointment and removal of commissioners, and must appropriate funds necessary for its operation. Section 4.2 and 4.3. Your measure is unclear, however, as to whether the General Assembly would retain its authority to adopt other laws regarding the Commission or whether this authority might be seen as the prohibited regulation of "casino gaming." Unclear for example, is whether the General Assembly would retain authority to set salaries of Commissioners or staff, or to impose legal requirements on the Commission that apply to other state agencies. Similarly, although your measure states that the General Assembly shall enact legislation so that the "statewide state-run lottery may begin at the earliest possible time" (Section 12.1), it is unclear to what extent the General Assembly can legislate pertaining to the Commission's operation of the lottery, including whether it may require lottery revenues to be placed in the state treasury. As noted above, the General Assembly will retain its legislative powers in this regard unless your measure expressly or by necessary implication denies it. I cannot determine from the current language whether a "necessary implication" exists.
 The issue of whether your measure invests state entities such as the Arkansas Gaming Commission or the Arkansas Department of Education with autonomous power over the topics addressed or whether the General Assembly retains its legislative power over these topics is a fundamental concept that may give voters "serious ground for reflection." As a consequence, these issues must be clearly delineated prior to their accurate summarization in a ballot title for your measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
Enclosures