Farris *v.* Ark. State Game & Fish Comm.

5-1293                                     310 S. W. 2d 231

Opinion delivered February 24, 1958.

*Charles A. Walls, Jr.; Bailey, Warren & Bullion, Charles A. Brown* and *William* and *Williamson,* for appellant.

*Ed E. Ashbaugh, Neill Bohlinger* and *Wood & Smith,* for appellee.

NABORS SHAW, Special Associate Justice. The question here presented is the power of appellee, Arkansas State Game and Fish Commission, to prohibit the sale of game fish raised by appellants in their vocation of fish farming in their privately owned reservoirs.

Appellants are two, of many persons, who have become engaged in the vocation of raising ·fish on their privately owned lands to be marketed for profit. In order to profitably raise so called, "rough fish," it is a recognized practice in fish farming to raise game fish in reservoirs to feed upon and reduce the number of "rough fish" so that the remaining "rough fish" will mature faster from the available vegetable and plant life in the reservoirs. It is when these cultivated fish are ready to be harvested, that the real issue is presented. The appellants contend that they should be permitted to sell the game fish just as they are permitted to sell their other fish, not classified as game fish, and for the Commission to prohibit their sale of game fish raised in private waters, is an infringement upon their rights as the owners of property to such an extent that it amounts to a taking of their private property without due process of law, or for public use; and without just compensation. The Commission contends to the contrary; that it has the power to make such regulations as it deems necessary for the conservation and protection of the wild life and game of the state; and that it is a valid exercise of the police power of the state to prohibit the sale of game fish in the furtherance of the program of conservation.

Prior to July 1, 1945, the effective date of Amendment 35 to the Constitution of Arkansas, by which the Arkansas Game and Fish Commission was created, the sale of game fish was regulated by the Legislature. One

of the earlier attempts on the part of the Legislature to regulate the sale of game fish was Act No. 157 of the Acts of 1925, Pope's Digest, Section 5935. Then Act No. 151 of the Acts of 1927, and which appears as Section 47-511 of the Arkansas Statutes was enacted. This Section provided: "Sale of game fish prohibited—Regulations permitting sale of game fish raised in private waters — Penalty — It shall be unlawful to sell, offer for sale, or possess for sale in this State, any game fish commonly known as black, striped, or white bass, or rock, or war-mouth,. or calico bass, crappie, bream, perch, pike, or jack-salmon. Provided, the Arkansas Game and Fish Commission may, under such rules and regulations as are necessary, issue a permit, in, writing, authorizing the sale of game fish raised in a private hatchery or private water. The fee for such privilege shall be Five ($5) Dollars per year. A violation of any provisions of this Section or of any rule or regulation promulgated hereunto shall constitute a misdemeanor and persons convicted thereof shall be fined in any sum not less than Twenty-Five ($25) Dollars, nor more than Three Hundred ($300) Dollars, and shall forfeit any permit the terms of which are violated."

Section 1 of Amendment No. 35 Provides: "The control, management, restoration, conservation and regulation of birds, fish, game and wild life resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission, to consist of 8 members." Section 8 of the amendment, further provides, "The Commission shall have the exclusive power and authority to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and fur-bearing animals, and shall have the authority to divide the State into zones and regulate seasons and manner of taking game and fish and fur-bearing animals therein, and fix penalties for violations." Section 8 further provides, "All laws now in

effect shall continue in force until changed by the Commission."

The Commission, pursuant to authority vested in it, under Amendment No. 35, adopted Article 124 of its General Rules and Regulations, which provides : "Sale of game fish prohibited — Penalty.  It shall be unlawful to sell, offer for sale, or possess for sale in this state any game fish commonly known as black, striped or white bass, or rock-war-mouth, or calico, crappie, bream, perch, pike, or jack-salmon, except green sun fish, (commonly known as Ricefield Slicks), four (4) inches in length may be sold for fish bait only. A violation of any provisions of this Section shall constitute a misdemeanor and any person convicted thereof shall be fined in any sum not less than Twenty-Five ($25) Dollars."

Subsequent to the promulgation of Article 124 of the General Rules and Regulations by the Commission, and subsequent to the commencement of these two consolidated causes of actions, the Legislature enacted Act 65 of the Acts of 1957 entitled, "An Act to Define Domestic Fish and to Declare the Policy of the State in Regard Thereto."  Act 65 defined "Domestic" fish to mean fish that are spawned and raised in privately owned waters, declared such "domestic" fish to be private property of the owners of the privately owned waters, in which they are found, declares the sale of such "domestic" fish to be lawful; as of common right, not as a privilege, and then declared that the sale of "domestic" fish could not be prohibited or restricted, or licensed by the State or any of its agencies; except as was provided for in Section 3 of said Act, which Section 3 laid down a set of rules and regulations for the Game and Fish Commission to follow in permitting the sale of "domestic" fish.  Section 4 of Act 65 provided that all laws and parts of laws, which are in conflict herewith are, to the extent of such conflict, hereby repealed.

Thus we have a direct conflict between Article 124 of the Commission's Rules and Regulations, and Act 65

of the Acts of 1957. One of the principal questions presented for this court to decide is which branch of the State Government, the Legislature or the Game and Fish Commission has the power to legislate on the sale of game fish from privately owned waters?

A majority of this court has concluded that this power is now vested in the Commission as opposed to the Legislature with the Adoption of Amendment 35. The only power reserved to the Legislature is the power to appropriate moneys for the use of the Game and Fish Commission from the Game Protection Fund, and the power to increase the resident hunting and fishing license from $1.50 annually, to a greater amount. The Amendment expressly provided that all laws in effect as of July 1, 1945, would continue in force until changed by the Commission, the foremost purpose of Amendment 35, is to conserve the wild life of this state, and to place this duty with the Commission, thereby divesting the Legislature of this duty. The Amendment clearly divests the Legislature of all of its powers to conserve the wild life resources of this state, except those powers expressly reserved therein, being the power to make appropriations and to increase the annual resident hunting and fishing licenses. Amendment No. 35, by its provision, "All laws now in effect, shall continue in force until changed by the Commission," strongly implied that the Commission, not the Legislature, is empowered to change, modify or promulgate new rules and regulations pertaining to the conservation of the wild life resources of the state. Where there is a divesting of legislative authority and an investing of constitutional authority, it is likely to give rise to many controversial matters. Although these powers may be well defined, still there is usually a gradual realization of these powers due to the few instances in which this Court is called upon to pass upon the questions of fact and to construe the applicable laws. It is noticed that only in a few instances has the Legislature, by the enactment of legislative acts other than appropriation measures, attempted to invade the powers of the Commission under Amendment No. 35; this, even though expressions direct from the Legis-

lature are bound to have considerable influence upon the Commission in the performance of its duty to conserve the wild life resources in this state.

This court has consistently upheld the powers of the Commission as opposed to the powers of the Legislature in the field of conservation of the wild life resources of this state. In the case of *W. R. Wrape Stave Company* v. *Game and Fish Commission,* 215 Ark. 233, 219 S. W. 2d 948, we held, ''The Game and Fish Commission has been given very broad discretion in determining how wildlife shall be preserved; that Amendment No. 35 is complete within itself, and that prior Legislative Acts, whether directive or restrictive in measure, have been superseded. It seems to have been the purpose of those who wrote the Amendment to cover the whole subject and to either provide or leave to the Commission methods for reaching these ends.'' This Court has upheld the powers of the Commission to enact laws different from those provided by the legislature in other instances, such as the power to fix the amount of license fees on hunting hounds, *State* v. *V. Casey,* 225 Ark. 149, 279 S. W. 2d 319, also wherein the Commission refused to recognize the validity of a 1949 legislative act which provided for counties and state to pay an equal bounty for the killing of wolves. *Arkansas State Game and Fish Commission* v. *Edgmon,* 218 Ark. 207, 235 S. W. 2d 554. Obviously, the people, by enacting this amendment, intended that the Commission should have the power to control, manage, restore, conserve and regulate the fish, game and wild life resources of the state, with the exception of the power expressly reserved to the Legislature to make appropriations and to fix the amount of the annual resident hunting and fishing license. Even though a majority of this Court is of the considered opinion that it is highly advantageous to that commendable business of fish farming to raise game fish, along with other fish, which the fish farmers are permitted to raise and market for a profit, still the Commission, through its broad discretionary powers in conservation measures, has determined that to market these game fish would hamper if

not make it impossible to enforce its rules and regulations so directly concerned with carrying out its duties in the conservation of the wild life resources of the state. The Commission is a trustee for the people of this State, charged with the duty of conserving the wild life resources. Its powers are not unlimited, but until such time as it is more clearly shown that the Commission has abused its broad discretionary powers in matters of conservation, then it cannot be contended that the Commission has exceeded the limits of its powers.

It is settled law that fish and fishing rights in waters entirely within land of a single owner, without means to migrate belong to the owner of the land. "The owner of the land has a right to take fish and wild game upon his own land, which inheres in him by reason of his ownership of the soil. It is a property right, as much as any other distinct right incident to his ownership of the soil. It is not, however, an unqualified and absolute right, but is bounded by these limitations: That it must always yield to the state's ownership and title, held for the purposes for regulation and preservation for the public use. These two ownerships are rights — that is to say, the general ownership for one purpose, and the qualified or limited ownership of the individual, growing out of his ownership of the soil are entirely consistent with each other, and in no wise conflict." *Arkansas State Game and Fish Commission* v. *Storthz,* 181 Ark. 1089, 29 S. W. 2d 294; *State* v. *Mallory,* 73 Ark. 236, 83 S. W. 955. The owner is free to do whatever he desires to do with such game fish, just as long as he does not undertake to use them in such a manner as would conflict with the purposes of the general ownership of the state; which purposes are to regulate and preserve the wild life resources of the state for the people. Here the Commission has determined that for the owners of game fish raised in their privately owned waters to be permitted to sell them, would inevitably create an enforcement problem. The opinion of the learned trial judge in this respect is amply supported by the evidence.

It is contended by appellants that the Commission by its Regulation, Section F, has determined that, "It shall be unlawful for any person to abandon or to permit to go to waste the edible portion of any game or fish in this state at any season of the year;" That this is likewise a regulation promulgated by the Commission and in the same category as the regulation prohibiting the sale of game fish. As previously stated, the powers and authority of the Commission are not unlimited. The Commission must exercise its powers in a reasonable and just manner. It cannot arbitrarily make rules and regulations in complete disregard of the property rights of others without some real basis, which has a direct relationship with the purpose to conserve the wild life resources of this state. In view of the evidence in these causes, it is clear that the enforcement of Regulation F would work an extreme hardship on those engaged in the vocation of fish farming, subject them to unreasonable penalties, and would result in an artibrary taking of their property without due process of law; therefore, Regulation F in so far as it affects the fish farmers, is invalid. By so holding the Court does not mean or imply that the Commission's Regulation F would be invalid as to the sports fishermen. To hold Regulation F valid as applicable to fish farmer would, with certainty, result in the taking of private property without just compensation and without due process of law. Even though Constitutional Amendment No. 35 gives broad powers to the Commission; nevertheless, the Commission is subservient to, and bound by, Art. 2, Section 22 of the Constitution, which reads: "* * * Private property shall not be taken, appropriated or damaged for public use, without just compensation therefore." See *Shellnut* v. *Arkansas State Game and Fish Commission*, 222 Ark. 25, 258 S. W. 2d 570.

The action of the Commission in prohibiting the sale of game fish raised in private waters is a valid exercise of the police powers of this state. The control, management, restoration, conservation and regulation of birds, fish, game and wild life resources of the state is a proper function of the police power of the

state. A majority of this court has determined that the Game and Fish Commission as opposed to the Legislature, is vested with the power to make such rules and regulations as is deemed necessary to protect and conserve the wild life resources of the state. In the exercise of its police power the Commission has determined that it should prohibit the sale of game fish from private impoundments of water. The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wild life resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution. Under the evidence adduced in these causes, the majority of this court cannot say that the Commission has abused its wide discretion. The commission, as trustee for the people of this state, has the responsibility and is charged with the duty to take whatever steps it deems necessary to promote the interest of the Game and Fish Conservation Program of this state; subject only to constitutional provisions against discrimination, and to any valid exercise of authority under the provisions of the Federal Constitution. The record and the excellent briefs show conclusively that the business of fish farming is of long standing and a very worthy vocation; that it is advantageous to fish farming and essential to the proper cultivation of "domestic" fish to have in each impoundment of water, game fish. It is further noted that this state has made rapid progress in the business of fish farming and that thousands of acres of land are now put to this use. No doubt, the fish farmers knew of the rules of the Commission in prohibiting the sale of game fish from public as well as private waters of the state at the time that they were becoming engaged in this comparatively

speaking new type of farming in this state. So, it cannot be said that the fish farmers have been misinformed or misled. The fish farmers may still utilize their game fish in any manner most advantageous to them; however, they cannot sell these game fish in violation of the rules and regulations of the Commission, which prohibit the sale of game fish.

It follows that the General Assembly exceeded its legislative powers in enacting Act No. 65 of the Acts of 1957, by attempting to exercise legislative powers pertaining to a subject matter, which was not expressively reserved in the Legislature by Amendment No. 35; therefore, a majority of this court holds that Act 65 of the Acts of 1957 is invalid. The contention of appellants that they have been deprived of their property without due process of law and without just compensation, in violation of the Constitution of this state and of the Federal Government, is without merit. The majority of this Court recognizes that appellants and the other fish farmers own the game fish raised in their private waters; that this is a property right as much as any other distinct right incident to their ownership of the soil. That it is not, however, an unqualified and absolute right, but is bounded by the limitation that it must always yield to the state's ownership and title, held for the purposes of regulation and preservation for the public use. Since the appellants have only a qualified ownership in the game fish raised in their private waters, which is subject to the general ownership of this state for the purposes of regulating and protecting the wild life and game for the common good of all the people; then it can be reasoned that the appellants cannot be deprived of that which they have never owned.

Accordingly, these causes are affirmed with the modification that the Commission's Regulation F is invalid, as applied to fish farmers. The issue in main, having been resolved in favor of appellees, the costs are taxed against appellants.

HARRIS, C. J., disqualified and not participating; McFADDIN and WARD, JJ., dissent.

786

PAUL WARD, Associate Justice, dissenting. My reasons for dissenting to the opinion of the majority may be grouped under the following headings: One, Amendment No. 35 did not give the Commission any authority over privately produced fish; and two, the Commission's power to regulate does not include the power to destroy.

Very briefly, this litigation arose as follows: Appellants filed a complaint in the Chancery Court of Pulaski County stating that they were about to take from their own privately owned reservoirs fish [meaning, when herein used, the kind of fish forbidden to be sold] and sell them at private or public sale, but that the Commission, unless enjoined, will subject them to prosecution and will confiscate their fish. The Commission answered: Unless enjoined it will prevent appellants from selling said fish; it is necessary to *confiscate* (emphasis supplied) said fish to protect the fish in the waters of the state, and; if the sale of game fish from private ponds is permitted, it will be impossible for the Commission to police and prevent the sale of game fish taken from public waters, causing the stock of game fish in public waters to be depleted.

From the above it is clear, of course, that the Commission is not attempting to *regulate* but to *destroy*—

*One.* To begin with, the Commission, in promulgating rules relative to the fish in question, is dealing with property over which it was given no jurisdiction by Amendment No. 35. I believe this statement cannot be successfully controverted. Sec. 1 of the amendment defines the scope of the Commission's jurisdiction in this respect. It includes control over "birds, fish, game and wildlife resources of the state." Even the majority opinion recognizes that such fish is not a resource of the state, for it states: ". . . this [speaking of such fish] is a property right as much as any other distinct right incident to their ownership of the soil." So, if such fish belong to the individuals who raise them it must follow, as day follows night, that they do not belong to the state.

*Two.* In view of what was pointed out above, it follows that the only power the Commission could have over such fish would be the same right the state had [before the

passage of Amendment No. 35]—the right to regulate. The right which the state had is clearly pointed out in *State* v. *Mallory,* 73 Ark. 236 [at page 248], 83 S. W. 955. It was there said: "We therefore conceive it to be settled by authority and by long recognition in the law that the owner of land has a right to take fish and wild game upon his own land, which inheres to him by reason of his ownership of the soil. It is a property right, as much as any other distinct right incident to his ownership of the soil. It is not, however, an unqualified and absolute right, but is bounded by this limitation, that it must always yield to the State's ownership and title, held for the purposes of *regulation and preservation for the public use.*" (Emphasis supplied.)

I consider it fundamental to a correct disposition of the question under consideration to recognize the importance of protecting private property—a matter which the majority seems to have overlooked. Art. 2, § 22 of our Constitution says "The right of property is before and higher than any constitutional sanction, and private property shall not be taken . . . without just compensation."

Since the Commission makes no pretense of compensating appellants, it is important to examine the situation to ascertain if the Commission is actually taking appellants' property. It is, of course, not denied that the Commission assumes the power to prevent appellants from selling their property or otherwise disposing of it for profit. Under the law this amounts to a taking. It is a rule so well established by the courts as to require no citations that the right to own property carries with it the right to dispose of it.

It is my view therefore that the maximum right the Commission has in this case is to regulate the sale of game fish raised by appellants. From the standpoint of simple justice there is a grave responsibility upon the Commission to exert every reasonable effort, by the promulgation of strict regulations, to make it possible to allow the growing industry of fish farming to continue in business on a profitable basis. At least the Commission should be will-

ing to make every possible effort in that direction. If the regulations provided in Act 65 of 1957 are not sufficient, the Commission has ample power to promulgate additional ones. If, however, after applying all reasonable regulations, still some damage results to the game fish in the public streams, that result cannot justify the taking of private property without just compensation in violation of the Constitution.

Incidentally I do not at all agree with the majority's announcement that the legislature has been stripped of all legislative authority except to appropriate money for the Commission and to increase resident hunting and fishing licenses. This conclusion of the majority is apparently based on a sentence in Amendment No. 35 which reads: "All laws now in effect shall continue in force until changed by the Commission." This language is found in Section 8 of the Amendment, as pointed out by the majority, and clearly has reference only to the powers given the Commission by that section. The majority view ignores the language in Section 1, which gives the Commission the power to administer ". . . the laws now and/or *hereafter pertaining thereto.*" (Emphasis supplied.) This language, to my mind, clearly implies that the people meant for the legislature to retain some power.

To my mind it is a matter of grave concern and importance that the majority opinion has now constituted the Fish and Game Commission an independent law making body.

I submit that, in the name of simple justice and according to the clear letter and spirit of the law, this case should be reversed and remanded to the trial court with directions to order the Commission to promulgate reasonable rules that will allow the growing industry of fish farming to continue as a profitable business. It is common knowledge that there is now considerable nation wide agitation in favor of fish farming, and Arkansas is most favorably situated to profit by such an industry.