SMITH *v.* McNAIR.

5-1925                           328 S. W. 2d 262

Opinion delivered October 26, 1959.

*James L. Sloan,* for appellant.

*J. Frank Holt, Prosecuting Attorney,* for appellee.

ED. F. McFADDIN, Associate Justice. The purpose of this suit is to determine the constitutionality of Act No. 70 of the Arkansas General Assembly of 1951, which Act is captioned: "An Act Directing the Issuance of Hunting and Fishing Licenses to Persons Sixty-five (65) Years of Age and Over Without Fee or Charge Therefor." The first sentence of the Act reads: "After the effective date of this Act any resident of this State who has attained the age of sixty-five (65) years shall be entitled to have issued to him upon application therefor a license to hunt and fish in this State without payment of any fee or charge therefor".

Appellant, as plaintiff below, filed suit for declaratory judgment and mandamus. The complaint alleged that the plaintiff was a citizen and resident of Arkansas over the age of 65 years; that the defendant was the Circuit Clerk of Pulaski County; that the plaintiff, with due proof, applied to defendant for a free fishing license under the provisions of said Act No. 70 of 1951; and that defendant refused to issue such license, making the claim that the Act was unconstitutional.[1] The defendant's demurrer to the complaint was sustained; and from a judgment dismissing the complaint there is this appeal.

We conclude that the Trial Court was correct, because the Act No. 70 of 1951 is unconstitutional. Amendment No. 35 to the Arkansas Constitution was adopted in November 1944; and the amendment[2] has this positive language: "Resident hunting and fishing license, each, shall be One and 50/100 Dollars annually, and shall not exceed this amount unless a higher license fee is authorized by an act of the legislature. The Commission shall have the exclusive power and authority to issue licenses and permits, . . ."

The quoted language does several things: (a) it puts a floor on the license fee at $1.50 per annum, but gives the Legislature power to *increase* the fee to a greater amount, as the Legislature has done[3] by Act No. 190 of 1957; and (b) it vests the Commission, *and not the Legislature*, with "exclusive power and authority to is-

---

[1] In 1953 the then Attorney General of Arkansas gave an opinion that the Act was unconstitutional; and in 1958 the present Attorney General of Arkansas gave an opinion that the Act was unconstitutional; so the defendant was merely following official legal advice in claiming the Act to be unconstitutional.

[2] We have considered this amendment in a number of cases, some of which are: *W. R. Wrape Stave Co.* v. *Ark. State Game & Fish Comm.*, 215 Ark. 229, 219 S. W. 2d 948; *Hampton* v. *Ark. State Game & Fish Comm.*, 218 Ark. 757, 238 S. W. 2d 950; *State Game & Fish Comm.* v. *Hornaday*, 219 Ark. 184, 242 S. W. 2d 342; *Shellnut* v. *Ark. State Game & Fish Comm.*, 222 Ark. 25, 258 S. W. 2d 570; *State ex rel Wright* v. *Casey*, 225 Ark. 149, 279 S. W. 2d 819; and *Farris* v. *Ark. State Game & Fish Comm.*, 228 Ark. 776, 310 S. W. 2d 231.

[3] A nice question could be posed as to whether the Act No. 190 of 1957 impliedly repealed the Act No. 70 of 1951, even if the 1951 Act had been constitutional; but our present decision renders such question immaterial.

sue licenses and permits''. Thus, after the 1944 Constitutional Amendment became effective, all the Legislature could do, as regards license fees, was to determine an increase: the Legislature had no power to say[4] who might be entitled to free license. Amendment No. 35 expressly limits the legislative power as regards license fees, and vests the Commission with ''exclusive power and authority to issue licenses and permits''. This constitutional language is crystal clear.

Affirmed.

JIM JOHNSON, Associate Justice, dissenting. I do not believe with the majority of the Court that Amendment 35 has so enfeebled the Legislature's lawmaking function that it was impotent to exempt residents of 65 years of age or over from the burden of paying a fee for the privilege of hunting and fishing in Arkansas.

In my opinion the majority has elevated form over substance in holding that because Amendment 35, Section 8, provides that, ''The Commission shall have the exclusive power to issue licenses and permits ...'', it must follow that the Legislature is bereft of power to make exemptions relating to the objects upon which the power of the Commission can be brought to bear. This is what the Legislature did in substance, though in form it directed the issuance of licenses without payment of fees therefor. Undoubtedly Amendment 35 has granted powers of broad scope to the Commission. In Section 1 the Commission is invested with the ''control management, restoration, conservation, and regulation of birds, fish, game and wildlife resources of the State ...''. However, it is hardly reasonable to assert that the Legislature cannot enact laws on general subjects merely because a game animal, a bird, or a fish lurks in the background. For if this were so, the Legislature would be hamstrung in such areas as water conservation, water pollution control, irrigation, forestry, and many others. What is there, if the majority of the Court is correct, to prevent the Commission from frustrat-

---

[4] Appellant argues that the classification, by age of 65, is a reasonable classification. Such an argument might be made if we were considering Constitutional Amendment No. 14, which prohibits special legislation, but that Amendment is not the one ruling in this case.

ing a legislative program of water pollution control or of forest conservation on the bases that fish live in the water and game animals and birds live in the forest. It is hardly consoling to consider that this has not happened yet—that when it does, a line would have to be drawn between the powers of the Legislature and of the Commission.

I believe the time for drawing a line is now, because I am convinced that the people did not intend by the adoption of Amendment 35 to create a Game and Fish Dictatorship but a Game and Fish Commission. They did not intend to embarrass the enactment of welfare legislation for the benefit of elderly people, but to provide for the conservation of wildlife resources for the enjoyment of all.

The majority opinion today, however, gives the Commission a *earte blanche* to exercise power unparalleled in any other department of State government, and, it has in the process, unwisely, I think, deprived a class of citizens of a privilege richly deserved to the detriment of all.

If the Legislature cannot provide for the welfare of the State's elderly people, who can?

For the foregoing reasons I respectfully dissent.