Gene SCHLEY and Edna Schley, Plaintiffs,

Lloyd Hilburn, Rollie Baldwin, Ira Groom, Leonard Holt, Bill McComas, Virgil McGill, E. A. Moore, Terrence Riley, Homer Burnett, Al Dunlap, J. M. Elliott, F. L. Fehrt, Dr. E. D. Reese, R. J. Sittler, Archie Adkinson, Addie Antweiler, Sherman Godsy, G. R. Herd, L. J. Hess, J. A. Kemper, Paul Kernodle, George H. Klieger, D. O. LaHue, Roy B. Miller, Truman McDaniel, L. F. McClurg, H. S. McClure, A. L. Riger, Ed Pruitt, Charles A. Parker, R. Presley, Lee C. Russel, A. L. Righ, Melvin Spradley, Ray Schoening, Arthur Schmude, H. E. Snyder, A. B. Thomas, Everett Trenery, Merle Templeton, L. O. Vincent, Orville Wyatt, Roy Williams and Forrest Wood, Interveners, Respondents,

v.

CONSERVATION COMMISSION OF the State of MISSOURI; John M. Dalton, Attorney General; Frank P. Briggs, Ben Cash, Ted Butler, Dru L. Pippin; Wm. E. Towell, Director, Defendants-Appellants.

No. 47239.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Aubrey R. Hammett, Jr., Columbia, for appellants.

Williams & Norton, North Kansas City, for respondents.

Terrence Riley, Platte City, for respondents and amicus curiae.

STOCKARD, Commissioner.

■ This is an appeal from the judgment of the Circuit Court of Clay County enjoining the appellants from arresting patrons of respondents for fishing in respondents' lakes without a Missouri fishing license. Jurisdiction is in this court because the Attorney General as such, a state officer, is a party defendant. Spiking School Dist. No. 71, DeKalb County v. Purported "Enlarged School District R–11, DeKalb County, Missouri", 362 Mo. 848, 245 S.W. 2d 13.

Respondents are the owners of real estate upon which they have constructed small lakes or ponds entirely within the boundaries of said property and which are not in any way or at any time connected to the public waters of this State. On their respective properties respondents operate what is known as "fee fishing lakes" where

their patrons and customers pay respondents for the privilege of fishing therein. The Commission stipulated that respondents "stock at their own expense the lakes with adult fish, catchable size, not breeding stock, purchased out of the State of Missouri and transported into the State in specially built transport trucks and deposited in the lakes that are wholly owned and controlled by the [respondents], upon premises of [respondents], and waters in which fish are held in captivity, and further that the State of Missouri does not share in any expense or in any manner with the stocking of the lakes with fish." The number of fish taken out of the lakes by customers is too great to depend upon a sufficient supply by natural reproduction, and when the fish stock is depleted the lakes are restocked by more adult fish from sources outside the State.

On December 11, 1957, the Director of the Missouri Conservation Commission (hereafter referred to as the "Commission") sent to respondents a form letter addressed to "fee fishing lake operators" in which it was stated that effective January 1, 1958, "under the 1958 Wildlife Code no wildlife breeder's permit will be charged to people who actually operate a fee fishing lake;" that the Commission had not established a specified form of license for operation of fee fishing lakes so "no permits for such operation will be required of you in 1958," and that "It was our feeling in the Commission that anyone exercising the privileges of fishing * * * should have the required permit under the regulations. Thus, anyone 17 years of age or over who fishes in your lake must have a fishing license."

On April 9, 1958, respondents Gene Schley and Edna Schley filed a petition in the Circuit Court of Clay County requesting that the court "interpret the policy of the defendants as set forth in the letter" of December 11, 1957; to declare that appellants do not have the right or authority to require the patrons of respondents to purchase a Missouri fishing license before they can fish in respondents' lakes, and to enjoin appellants from arresting respondents' patrons who are fishing in respondents' lakes without a fishing license. On April 23, 1958, interveners-respondents were permitted to intervene in the suit. On August 22, 1958, the trial court entered findings of fact and conclusions of law that the fish in respondents' lakes are not wildlife within the meaning of that term as used in Section 40(a), Article IV of the Constitution of Missouri, V.A.M.S., the Statutes of Missouri and the regulations of appellants, and that the policy of appellants as set forth in the letter of December 11, 1957, is contrary to the Laws of Missouri and the Constitution of Missouri. The trial court then enjoined the appellants from arresting patrons of respondents who fish in the lakes of respondents without a fishing license.

Section 40(a), Article IV, Constitution of Missouri, provides that "The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state * * and the administration of all laws pertaining thereto, shall be vested in a conservation commission * * *." After the adoption of the 1945 Constitution the Legislature repealed the then existing fish and game law, see Sections 8864–8971 RSMo 1939, and enacted in lieu thereof what is known as The Wild Life and Forestry Law. Sections 252.010–252.230 and Sections 12.050, 560.570 and 560.575, RSMo 1949, V.A.M.S. In Sections 252.020 the term "wild life" is defined to mean "all wild birds, mammals, fish and other aquatic and amphibious forms, and all other wild animals, regardless of classification, whether resident, migratory or imported, protected or unprotected, dead or alive; * *." Section 252.030 provides: "The ownership of and title to all wild life of and within the state, whether resident, migratory or imported, dead or alive, are hereby declared to be in the state of Missouri. Any person * * * who pursues, takes, kills,

possesses or disposes of any such wild life or attempts to do so, shall be deemed to consent that the title of said wild life shall be and remain in the state of Missouri, for the purpose of control, management, restoration, conservation and regulation thereof." Section 252.040 provides that no wildlife shall be pursued, taken, killed, possessed or disposed of except in the manner, to the extent and at the time or times permitted by the rules and regulations of the Commission and that "Any person violating this section shall be guilty of a misdemeanor."

Pursuant to its authority to do so, see Marsh v. Bartlett, 343 Mo. 526, 121 S.W.2d 737, the Commission enacted rules and regulations, designated by it as the "Wildlife Code of Missouri" and hereafter referred to as the "Code." The entire Code of 1957 was not introduced in evidence, but Section 46(b) thereof provided for what was termed a "Wildlife breeder's permit," and that it could be obtained "To maintain and operate a wildlife farm, a *fee fishing lake,* or a wildlife exhibit, and to exercise the privileges of a wildlife breeder as herein permitted, * * *." (Emphasis added). Section 51 then provided that wildlife (with certain exceptions not here material) may be propagated and held in captivity by the holder of a wildlife breeder's permit, and that such permit "may be granted after satisfactory proof by the applicant that all such wildlife was secured from a source other than the wild stock in this state, and that the applicant is equipped to confine such wildlife for public safety and to prevent wildlife of the State from becoming a part of the enterprise." This section further provided that "Wildlife so propagated and held may be used, sold, given away, transported or shipped at any time, but the same shall be accompanied by a written statement by the permittee giving his permit number and showing truly the kind and number of each species sold, given away, transported or shipped, the name and address of the recipient, and that as to the same he has

fully complied with this code." The Commission stipulated "That prior to January 1, 1958, it had been the policy of the [Commission] that [respondents] must operate under a Wildlife Breeders Permit; that [respondents'] customers were not required to purchase a fishing permit in order to fish on [respondents'] lakes; * * * that without any change whatever in the conditions of the lakes, the [Commission has] changed [its] policy with regard to requirement of a fishing permit," and that respondents were notified of this change by the letter dated December 11, 1957.

Effective January 1, 1958, a general revision of the Code was made, and the 1958 Code contains a provision in Rule 1.10 that no "* * * fish * * * or other form of wildlife * * * shall be * * * taken * * * bought, sold, given away, accepted, possessed, imported * * * except as specifically permitted," and that unless specifically excepted "wildlife may be taken only by the holder of a permit and in accordance with methods presented by this Code." Provision is then made in Rule 7.50 for the issuance of a permit as follows: "Wildlife Breeder's Permit.—To propagate, hold and exhibit wildlife and to exercise the privileges of a wildlife breeder as herein permitted." Rule 7.55, entitled "Privileges of Wildlife Breeder," then provides that "Wildlife * * * [with exceptions not here material] may be propagated and held in captivity by the holder of a wildlife breeder's permit, as provided herein. Such permits may be granted after satisfactory evidence by the applicant that all such wildlife was or will be secured from a source other than the wild stock in this State, and that the applicant will confine such wildlife for public safety or [and?] prevent wildlife of the State from becoming a part of the enterprise. * * * Wildlife so propagated and held may be used, sold, given away, transported or shipped at any time," except black bass for limited purposes, provided that a written statement containing the same information as that required by Section 51 of

the 1957 Code be furnished. It is to be noted that the recited privileges of one holding a wildlife breeder's permit under the 1958 Code, with the immaterial exceptions noted, are precisely the same as under the 1957 Code. It is clear that those privileges include the holding in captivity of wildlife which was not propagated by the permittee in addition to the holding in captivity of wildlife which had been propagated by the permittee. The Commission recognizes this by requiring proof that the wildlife so held was or will be secured from a source other than the wildlife stock of this State, and also by providing in Rule 7.53 that "Prior to the renewal of a permit, each wildlife breeder shall submit a notarized report * * * showing the number and species of wildlife and its place of origin, which was propagated, possessed, bought, sold, transported, shipped or used by him during the period covered by the last previous permit." The Commission, in its stipulation, agrees that respondents' fish are held in "captivity" by them.

▉ In its brief the Commission repeatedly refers to the "new policy" effective January 1, 1958, and contends that it was adopted because the Commission made a determination that respondents were not in fact wildlife breeders. We are not certain what is meant by the reference to "new policy," but we know of no authority for the Commission to adopt "policy" which affects the right of a person to pursue, take, kill, possess or dispose of wildlife except by duly promulgated rules and regulations, the violation of which the Legislature has by Section 252.040 made a crime. Such rules and regulations, "especially those bearing criminal penalties," Sentner v. Colarelli, D.C., 145 F.Supp. 569, 578, are subject to the same rule of definiteness as statutes.

▉ We think it is of little importance what name the Commission chooses to give to a permit when it specifically sets forth in the rules and regulations the activities in which the holder of the permit may engage. While it is true that the undefined term "fee fishing lake" was deleted from the 1958 Code, Rule 7.55 of that Code, in clear and unequivocal language expressly authorizes the holder of what the Commission has elected to call a wildlife breeder's permit to engage in the precise activities which the Commission has stipulated are engaged in by respondents, and it also authorizes respondents to use, sell or give away the fish so held to those who do not possess a Missouri fishing license. While as a general rule it is the function of the courts to determine the intention of the agency promulgating rules and regulations, the courts are not entitled to hold that although the Commission clearly and unequivocally said one thing it meant the exact opposite. When we construe the language of the Commission in its 1958 Code, and particularly the language of Rules 7.50, 7.53 and 7.55, it has, in our opinion, clearly and unequivocally stated that one engaged in the precise activities in which it has stipulated respondents are engaging is entitled to a permit from the Commission to carry on those activities, and it is immaterial by what name the Commission has elected to identify that permit. In addition, the Commission agrees that the customers of one who holds a wildlife breeder's permit may obtain and possess the fish of respondents without possessing a Missouri fishing license. It thus appears that by its published rules and regulations, as distinguished from a "policy" stated in letter form, the Commission has expressly authorized the customers of respondents to fish in respondents' lakes without a Missouri fishing license if respondents obtain a wildlife breeder's permit, and that under its rules and regulations and the stipulated facts respondents are entitled to such permit.

The above conclusion makes it unnecessary in this proceeding to determine

whether or not respondents' fish are subject to any regulation whatever by a Commission whose authority under the Constitution is limited to "The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife *resources of the state* * * * and the administration of all laws pertaining thereto, * * *" (emphasis added). For some reason this question has not been briefed in this case, but the parties addressed themselves only to the question of whether the fish constituted wildlife. Also, we do not now rule on the reasonableness of a regulation, if the Commission is authorized to make it, which would require customers of respondents to possess a fishing license. Under constitutional and statutory provisions somewhat similar to those in Missouri it was held in Farris v. Arkansas State Game and Fish Commission, 228 Ark. 776, 310 S.W.2d 231, 235, that "The Commission must exercise its powers in a reasonable and just manner. It cannot arbitrarily make rules and regulations in complete disregard of the property rights of others without some real basis, which has a direct relationship with the purpose to conserve the wild life resources of this state." We also feel that in view of the somewhat confusing provisions of the 1958 Code, particularly when considered with the 1957 Code, and the references in this case to what appears to be "policy" of the Commission, other than that expressed by its rules and regulations, the following observations may be made. The 1958 Code in plain, clear and unequivocal language prohibits respondents from carrying on their activities in the manner which the Commission has stipulated they are being done without a permit from the Commission. But in the letter dated December 11, 1957, the director of the Commission, in direct contravention of its published rules and regulations announced as a "policy" of the Commission that "No permits for such operation will be required." Unless it be assumed that the Commission's position is that it can by letter make exceptions to its published rules and regulations, this announcement of "policy" that no permit will be required of respondents can only indicate that the Commission considers the fish in respondents' lakes not to constitute wildlife resources of the State. But the Commission has announced in its letter of December 11, 1957, that persons who fish in respondents' lakes must have a Missouri fishing license, a requirement it is authorized to impose only if respondents' fish do constitute wildlife resources of the State.

For the reasons previously set forth, the trial court reached the correct result, although we do not pass on the merits of the reasons assigned. Therefore the judgment is affirmed.

BOHLING, C., concurs.

BARRETT, C., concurs in result.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.