The Honorable George Hopkins State Senator Box 78, Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This is in response to your request for an opinion on the following questions:
 1. Does the Arkansas Game and Fish Commission ["Commission"] control wildlife resources on private property?
2. Is there a tax assessment on wildlife resources?
It may be concluded that the answer to your first question is, generally, "yes", in the sense that the Commission has been given broad authority to control, manage, restore, conserve and regulate the game and wildlife resources of Arkansas. Const. Ark. Amend. 35; see also State ex rel. Wright v. Casey, 225 Ark. 149, 151,279 S.W.2d 819 (1955). It must also be recognized, however, that the powers and authority of the Commission are not unlimited. Farris v. Ark. Game and Fish Comm., 228 Ark. 776, 783, 310 S.W.2d 231
(1958).
In Farris, supra, the Arkansas Supreme Court was presented with a question involving the power of the Commission to prohibit the sale of game fish raised by fish farmers in their privately owned reservoirs. Part of the regulations at issue in that case provided that it shall be unlawful for any person to abandon or to permit to go to waste the eatable portion of any game or fish in the state at any season of the year. Farris, 228 Ark. at 783. The Court invalidated this regulation as to fish farmers, concluding that it would work an undue hardship on fish farmers and would result in an arbitrary taking of property without due process of law. Id. The regulation was upheld, however, as to sports fishermen.
The Court's discussion of the Commission's powers, and the limitations thereon, is helpful. The Court stated:
 It is settled law that fish and fishing rights in waters entirely within land of a single owner, without means to migrate belong to the owners of the land. `The owner of the land has a right to take fish and wild game upon his own land, which inheres in him by reason of his ownership of the soil. It is a property right, as much as any other distinct right incident to his ownership of the soil. It is not, however, an unqualified and absolute right, but it is bounded by these limitations: that it must always yield to the state's ownership and title, held for the purposes for regulation and preservation for the public use. These two ownership rights — that is to say, the general ownership for one purpose, and the qualified or limited ownership of the individual, growing out of his ownership of the soil are entirely consistent with each other, and in no wise conflict.' [Citations omitted.] The owner is free to do whatever he desires to do with such game fish, just as long as he does not undertake to use them is such a manner as would conflict with the purposes of the general ownership of the state; which purposes are to regulate and preserve the wildlife resources of the state for the people.
Farris, 228 Ark. at 782.
The above discussion followed the Court's ruling upholding a regulation prohibiting the sale of game fish raised in private waters. Thus, although the Court accepted the fish farmers' due process and "taking" arguments with respect to the regulation prohibiting the waste of the eatable portion of any game or fish, it confirmed other action of the Commission in relation to game fish in private waters, based upon the Commission's power to protect and conserve the wild life resources of the state. The following language from the case is illustrative of this power: The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations . . . is that [they] must reasonably tend to correct some evil, or promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution.
The Court then concluded:
 The contention of appellants that they have been deprived of their property without due process of law and without just compensation [in relation to the prohibition against the sale of game fish raised in private waters], . . . . is without merit. The majority of this Court recognizes that appellants and the other fish farmers own the game and fish raised in their private waters; that this is a property right as much as any other distinct right incident to their ownership of the soil. That it is not, however, an unqualified and absolute right, but is bounded by the limitation that it must always yield to the state's ownership and title, held for the purposes of regulation and preservation for the public use. . . . [T]he appellants have only a qualified ownership in the game fish raised in their private waters which is subject to the general ownership of this state for the purposes of regulating and protecting the wild life and game for the common good of all the people. . . .
The Farris case illustrates the need to review and consider the particular facts surrounding any action of the Commission in relation to the wildlife resources on private property. Its powers are not unlimited, but it must be ". . . clearly shown that the Commission has abused its broad discretionary powers in matters of conservation" (Farris, 228 Ark. at 782), before a court will conclude that it has exceeded the limits of its powers.
With regard, specifically, to hunting rights on private property, please note that I have enclosed a copy of Opinion Number 89-184 wherein it was concluded that the Commission does not have the authority or responsibility to provide public access to fish or wildlife resources on privately-owned lands.[1] Op. No. 89-184 at 4. That is not to say, however, that the property owner's right to control access to his property is unlimited. The state's "general ownership" and title, as noted in Farris, supra, must be recognized. The Commission's authority to issue reasonable regulations in order to promote the protection and conservation of the wildlife resources may impact the hunting rights. The particular facts and circumstances in each instance must be considered.
It is my opinion that the answer to your second question is, generally, "no." The Arkansas Supreme Court has adhered to the general doctrine of state ownership of the wildlife resources of the State of Arkansas. State v. Mallory, 73 Ark. 236, 83 S.W. 955
(1904); Arkansas State Game Fish Commission v. W.R. Wrape Stove Co., 76 F. Supp. 323 (D.C. Ark. 1948); Farris v. Arkansas State Game and Fish Commission, supra.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] It should be noted in this regard that the Arkansas Supreme Court has in several instances refused to permit the Commission to acquire private lands by eminent domain, under the guise of a game refuge, in order to convert the property to a public hunting ground. Hampton v. Ark. State Game and Fish Comm., 218 Ark. 757, 238 S.W.2d 950
(1951); Ark. Game Fish Comm'n. v. Gill, 260 Ark. 140,538 S.W.2d 32 (1976).