Mr. Steve Wilson, Director Arkansas Game and Fish Commission 2 Natural Resources Drive Little Rock, AR 72205
Dear Mr. Wilson:
This is in response to your request for an opinion on whether the Arkansas Game and Fish Commission ("Commission") is exempt from the General Accounting and Budgetary Procedures Law of Arkansas (A.C.A. 19-4-101, et seq.).
Your question arises over a dispute involving the disapproval of a Commission expenditure of $44.10 for a plaque of appreciation given to a retiring employee. The expenditure was designated as non-allowable by the Department of Finance and Administration, and approval of the voucher for payment was denied. It is clear that, in practice, Department of Finance and Administration exercises authority to disapprove expenditures. The Commission maintains that the expense is allowable under Commission policies.[1]
In your request, you reference language contained in a June 2, 1987 Memorandum which was sent from this office to the Governor and to the General Assembly, who were at the time defendants in Chaffin v. Arkansas Game and Fish Commission, 296 Ark. 431,757 S.W.2d 950 (1988). The memorandum states that 15 of Act 939 of 1987 (the Commission's appropriation act), which provides that the restrictions of the General Accounting and Budgetary Procedures Law, as well as other state laws and regulations, must be strictly complied with in the Commission's disbursement of appropriated funds, is unconstitutional. The memorandum states: Similarly, Amendment 35 does not reserve to the General Assembly the power or right to condition the expenditure of appropriated funds on the Commission's compliance with various Arkansas purchasing laws or Department of Finance Administration's regulations. Therefore 15 is unconstitutional, being in violation of Amendment 35 and the Separation of Powers Doctrine.
You request clarification of this language as it related to the General Accounting and Budgetary Procedures Law of Arkansas, and wish to know whether, indeed, the Game and Fish Commission is exempt from that law.[2]
For the reasons that follow, it is my opinion that some of the provisions of the General Accounting and Budgetary Procedures Law (hereafter "the act") expressly exempt the Game and Fish Commission from their operation, and that other provisions, although facially applicable to the Commission, would be constitutionally suspect as applied to the Commission.
The General Accounting and Budgetary Procedure law is an expansive act, covering the entire Chapter Four of Title Nineteen of the Arkansas Code Annotated. It dictates fiscal policies of the state agencies covering everything from the preparation of budgets (A.C.A. 19-4-302 et seq.) to the issuance and use of gasoline credit cards (A.C.A. 19-4-1001 et seq.). The act by its own terms exempts the Game and Fish Commission from many of its provisions and subchapters. Specific examples include 19-4-201 (exemption from budget review by the Governor); 19-4-305 (exemption from budget analysis and recommendations of the Chief Fiscal Officer);19-4-605 (exemption from preparing an annual operations plan);19-4-801 (exemption from certain restrictions on the expenditure of cash funds); 19-4-904 (exemption from provisions applicable to travel expenditures); and 19-4-1303 (exemption from provisions requiring monitoring for deficit spending).
Other provisions of the act appear on their face to be applicable to the Commission. This fact is evidenced by the general statement of policy found in A.C.A. 19-4-102, which provides:
(a) General Policy.
 (1) It is the policy of the State of Arkansas to:
 (A) Maintain on a sound financial basis the state and all of its agencies, boards, commissions, departments, and institutions, all referred to in this chapter as "agencies" unless otherwise necessary.
There is no general definitional section defining "agencies". Rather, that definition is left up to each individual subchapter. We must determine, then, whether the provisions which do not exempt the Game and Fish Commission, and ostensibly operate to govern its activities, may constitutionally so operate in light of the language of Amendment 35 to the Arkansas Constitution.
It is my opinion that the provisions of the act, especially those provisions which operate to pre-approve or dictate Commission expenditures, as applied to the Commission, are constitutionally suspect.
Amendment 35 to the Arkansas Constitution grants broad powers to the Commission to control, regulate, and manage the wildlife resources of the State of Arkansas. Relevant to our inquiry is language found in 8 of the Amendment, which provides in pertinent part as follows:
 The fees, monies, or funds arising from all sources by the operation of the said Commission and from the application and administration of the laws and regulations pertaining to birds, game, fish and wildlife resources of the State and the sale of property used for said purposes shall be expended by the Commission for the control, management, restoration, conservation and regulation of the birds, fish and wildlife resources of the State, including the purchases or other acquisitions of property for said purposes and for the administration of the laws pertaining thereto and for no other purposes. All monies shall be deposited in the Game Protection Fund with the State Treasurer and such monies as are necessary, including an emergency fund, shall be appropriated by the Legislature at each legislative session for the use of the Game and Fish Commission as hereto set forth. No monies other than those credited to the Game Protection Fund can be appropriated.
 . . . The books, accounts and financial affairs of the Commission shall be audited by the State Comptroller as that department deems necessary, but at least once a year.[3]
 . . . Said Commission shall have the power to acquire by purchase, gifts, eminent domain, or otherwise, all property necessary, useful or convenient for the use of the Commission in the exercise of any of its duties. . . .
Amendment 35 has been interpreted by the courts as giving broad authority to the Commission. It has been held that: In considering the question of the powers of the Commission, we must first view Constitutional Amendment 35, which of course is an act of the ultimate sovereign, the people of Arkansas, and is subject only to constitutional, not legislative or judicial limitations. Arkansas Game and Fish Commission v. Stanley, 260 Ark. 176,538 S.W.2d 533 (1976)
It has also been held that the Commission is "not only an administrative agency with constitutional status but the repository of certain powers enumerated in Amendment 35 to the Arkansas constitution by which it was created." Stanley, supra, at p. 178. Additional, in Chaffin v. Arkansas game and Fish Commission, supra, the court stated that "(o)bviously, Amendment 35 gave the commission more power to act independently than other state agencies that are not independent constitutional agencies"296 Ark. at 438.
Finally, in Farris v. Arkansas State Game and Fish Commission,228 Ark. 776, 310 S.W.2d 231 (1958), the court stated that under Amendment 35, "(t)he only power reserved to the Legislature is the power to appropriate moneys for the use of the Game and Fish Commission from the Game Protection Fund, and the power to increase the resident hunting and fishing license. . . ."228 Ark. at 780. The court also quoted W. R. Wrape Stave Company v. Game and Fish Commission, 215 Ark. 229, 219 S.W.2d 948 (1949), noting that "(t)he Game and Fish Commission has been given very broad discretion in determining how wildlife shall be preserved; that Amendment No. 35 is complete within itself, and that prior Legislative Acts, whether directive or restrictive in measure, have been superseded." 228 Ark. at 781.
The court in Farris also had occasion to note that:
 (w)here there is a divesting of legislative authority and an investing of constitutional authority, it is likely to give rise to many controversial matters. Although these powers may be well defined, still there is usually a gradual realization of these powers due to the few instances in which this court is called upon to pass upon the questions of fact and to construe the applicable laws. 228 Ark. at 780
These cases are helpful in delineating the general parameters of Amendment 35. They do not, however, purport to address the legislature's authority to regulate financial affairs of the Commission, when that exercise of authority does not directly interfere, or encroach upon the Commission's authority to control and regulate wildlife in the state.
The issue thus becomes to what extent the legislature, or other divisions of the executive branch of government (i.e., the Department of Finance and Administration)[4], can demand compliance with the General Accounting and Budgetary Procedure Law.
The resolution of this question must come from construction of Amendment 35, as the paramount law on the issue. That Amendment provides, as regards fiscal affairs, that "the books, accounts and financial affairs of the Commission shall be AUDITED by the State Comptroller as that department deems necessary, but at least once a year." (Emphasis added.) It is my opinion that any exercise of authority over the Commission's financial affairs must be exercised within the granted authority to "audit." I will explain what the audit function consists of later in this opinion.
Amendment 35 also states that the Commission has the power to acquire all property "necessary, useful or convenient for the use of the Commission in the exercise of any of its duties." It does not state that such acquisitions shall be subject to the prior approval of any other division of state government. It is thus my opinion that the refusal of such other division of state government to APPROVE a voucher for payment, where the expenditure is not outside the purposes of the Commission, violates Amendment 35, particularly as interpreted in the holding of Chaffin v. Arkansas Game and Fish Commission, supra. The holding of Chaffin v. Arkansas Game Fish Commission, supra, is quite broad. There, the Arkansas Supreme Court held that the legislature has no authority to direct allocation of resources of the Commission so long as those expenditures fall within the Commission's duties as set out by Amendment 35. Id. at 437. The legislature cannot, the Court held, substitute its judgment for that of the Commission on a question of management of resources. Id. at 438. In holding the legislative "review and advice" provision of the act in question unconstitutional, the Court found the effect of negative advice was merely a veto of executive actions by the legislature and cited with approval a Colorado case (Anderson v. Lamm,195 Colo. 437, 579 P.2d 620 (1978)), for the proposition that a legislature may not attach conditions to a bill purporting to reserve powers of close supervision. Chaffin at 443. Presumably, the Court would hold any encroachment (legislative or executive) on the power to allocate Commission resources (with the exception of post-expenditure audit) suspect. The Chaffin Court continued, by stating the Commission should be free from "paralyzing interference" in exercising its expending authority granted by Amendment 35. Certainly, the Department of Finance and Administration here has engaged in "interference" of the Commission function when it disapproved the expenditure at issue. It thus follows that A.C.A. 19-4-1104(a) is constitutionally suspect as applied to expenditures of the Game and Fish Commission.
As regards other provisions of the act, provisions which do not deal with approval of expenditures, it appears that such provisions, in order to pass constitutional muster, must be in compliance with the authority granted in Amendment 35 to "audit". "Audit" is defined by Black's Law Dictionary as meaning "systematic inspection of accounting records involving analyses, tests, and confirmations." Black's Law Dictionary (5th Ed. 1979) at p. 120. It is also defined by Webster's as meaning "a formal or official examination and verification of an account book; a methodical examination and review; to examine with intent to verify." Webster's Seventh New Collegiate Dictionary (1972) at p. 58.
It is my opinion that this definition includes the authority to inspect, examine, verify, and report. It does not include the authority to control, or the authority to impose extraneous accounting standards. As I understand it, the "audit", as currently performed on the Commission, involves two phases. One phase is the yearly post-audit performed by the Division of Legislative Audit (see generally note fn2 supra). This phase includes an inspection of the Commission's books and accounts, and culminates in an audit report which, among other things, notes any deviations from the various fiscal laws of the state. The second phase is a continual pre-audit system, performed by the Pre-Audit Division of the Department of Finance and Administration. This phase involves the vouchering of proposed expenditures, and — Pre-Audit's review and APPROVAL of the expenditures before they are authorized for payment from the treasury. If a proposed expenditure is not in compliance with the fiscal law of the state, or in conformity with Department of Finance Administration's regulations, it is disapproved.
It is my opinion that phase one of the current "audit" performed by Legislative Audit is the audit contemplated by Amendment 35, and that phase two of the current "audit," which is performed by the Pre-Audit Division of the Department of Finance and Administration, does not constitute an "audit," but rather is an unconstitutional interference with the Commission's authority under Amendment 35[5] as that Amendment has been interpreted in Chaffin, supra.
Therefore, in response to your specific question (whether the Commission is exempt from the General Accounting and Budgetary Procedures Law), it is my opinion that the Commission is exempt by the act's own terms under several subchapters (see discussion at page 3 [of the hard copy, but page 89-098 in the system] supra), and that the remaining provisions of the act, to the extent they go beyond the authority to "audit", are constitutionally suspect as applied to the Commission. I will not undertake herein to discuss the constitutionality of each provision of a statutory scheme which covers nearly two hundred pages of a volume of the Code. I will point out, however, that it is my opinion that the most constitutionally egregious provisions of the act are those which attempt to authorize PRE-APPROVAL of Commission expenditures. The constitutionality of the imposition of certain accounting procedures and budgetary control mechanisms is a less certain question, although it is my opinion that the imposition of these measures may be outside the authority granted in Amendment 35 to "audit." To the extent that this opinion is in conflict with our previous Opinion No. 85-160 (written prior to the Chaffin opinion), this Opinion governs.
As a final matter, it must be noted that the Commission is not granted unlimited authority in Amendment 35. The authority granted is subject to the constitutional limitations imposed by that amendment and all other constitutional limitations.[6] The Commission cannot spend money outside of its proper purposes, spend funds which have not been appropriated as required by the constitution, or spend funds so as to create an illegal exaction. It must generally confine its activities to the purposes stated in Amendment 35. It must be recognized, however, that the Commission is an independent constitutional agency with its specific duties and powers enumerated in that document. Of course, the Commission can comply with any and all state systems for financial management on a voluntary basis, but it may be successfully contended that it is not required to yield to other divisions of state government when not required to do so by Amendment 35, or other provisions of the Constitution.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
NOTE: Opinions Nos. 80-118 and 82-132 will be found in the "system" in their respective files. Opinion No. 85-160 is in the system.
[1] The Department of Finance and Administration approved the voucher, but has stated that similar future expenditures will not be approved.
[2] Your request does not involve an inquiry as to whether the Commission is exempt from the provisions of the State Purchasing Law. That issue was resolved by a December 11, 1987 Chancery Court decree in Chaffin, supra. The parties agreed in Section 2 therein that the Commission was exempt from the provisions of the State Purchasing Law. This portion of the decree was not appealed to the Arkansas Supreme Court in Chaffin, supra. See also Opinion No. 80-118 issued by this office, a copy of which is enclosed.
[3] The office of State Comptroller no longer exists. The powers of that office were transferred to the Department of Administration in 1967. See former Ark. Stat. Ann. 5-801 and 5-802. In 1969, the division of Local affairs and Audits was transferred to the Division of Legislative Audit. (See former Ark. Stat. Ann. 13-1516.) Thereafter, in 1971, the remaining powers of the Department of Administration were transferred to the Department of Finance and Administration. (See former Ark. Stat. Ann. 5-905 and A.C.A. 25-8-101.)
[4] The Department of Finance and Administration is granted authority under the General Accounting and Budgetary Procedures Law, 19-4-104, to make, amend, and enforce rules and regulations necessary and proper to carry out that law. Regulations adopted by the Department are adopted pursuant to authority granted in that law, and therefore their application and enforcement are also called into question in your request for this opinion.
[5] It should be noted that this system, to the extent implemented by the legislative branch, is also violative of the separation of powers doctrine. (See Arkansas Constitution Art. 4, 2.) This doctrine, however, plays a subordinate role in our analysis, due to the fact that the conduct complained of also violates the more specific provisions of Amendment 35. See also, generally, Opinion No. 82-132, a copy of which is enclosed.
[6] For example, the Commission concedes that it is subject to the purchasing restrictions contained in Amendment 54.