The Honorable Allen Gordon State Senator The Honorable John Lipton State Representative Game and Fish Commission Funding Study Subcommittee State Capitol, Room 315 Little Rock, AR 72201
Dear Senator Gordon and Representative Lipton:
This is in response to your request for an opinion on whether the allocation of funds to the Game Protection Fund for appropriation under each of the following conditions would violate Amendment 35
to the Arkansas Constitution or other applicable law:
 1. Designating the amount of general revenues attributable to or arising from hunting and fishing activities in the state as special revenues to be credited to the Game Protection Fund.
 2. Levying an excise tax on arrows, bows, firearms, hunting equipment, parts and accessories for a bow, parts and accessories for firearms, shells and ammunition, and sport fishing equipment as defined in the attached House Bill 1280 of 1991 and under procedures set out therein and designating all proceeds to be special revenues to be credited to the Game Protection Fund.
 3. Developing a fee or license in connection with an area of regulation that the Game and Fish Commission is involved in and designating the proceeds to be special revenues to be credited to the Game Protection Fund.
 4. a. Creating a sales and use tax exemption for arrows, bows, firearms, hunting equipment, parts and accessories for a bow, parts and accessories for firearms, shells and ammunition, and sport fishing equipment (as those terms are defined in the attached bill).
 b. In a separate piece of legislation levying a 4.5 percent excise tax on those items and designating all proceeds to be special revenues to be credited to the Game Protection Fund.
 5. Using the same legislation set out in (4) but with a yearly cap on the amount to be credited to the Game Protection Fund and any additional funds going to the General Revenue Fund of the State Treasury.
Any consideration of proposed revenue sources for the Arkansas Game and Fish Commission ("Commission") must, in my opinion, begin with the recognition that the Arkansas Supreme Court has heretofore expressed its view that Amendment 35 is "complete within itself," and that those who wrote the amendment intended for it to "cover the whole subject, and to either provide, or leave to the Commission, methods for reaching these ends." W.R.Wrape Stave Co. v. Arkansas State Game Fish Commission,215 Ark. 229, 235, 219 S.W.2d 948 (1949). See also Farris v.Ark. State Game Fish Comm., 228 Ark. 776, 781, 310 S.W.2d 231
(1958); Ark. Game Fish Comm'n v. Stanley, 260 Ark. 176, 181,538 S.W.2d 533 (1976). The court has made the following observation:
 Obviously the people by enacting [Amendment 35] intended that the Commission should have sufficient and ample funds with which to function in preserving and propagating wildlife in the manner provided therein.
State ex rel. Wright v. Casey, 225 Ark. 149, 152,279 S.W.2d 819 (1955). This observation followed the court's ruling that the Commission alone has the power to levy a license fee on all hunting dogs. Id. See also Chaffin v. Arkansas Game FishComm'n, 296 Ark. 431, 441, 757 S.W.2d 950 (1988).
The above language suggests that the court views the sources mentioned in the amendment as the intended means by which the ends contemplated may be achieved. It was therefore concluded in Attorney General Opinion Number 91-034 that general revenues of the state may not be lawfully allocated to the Game Protection Fund for appropriation. The Game Protection Fund is comprised of "[t]he fees, monies, or funds arising from all sources by the operation and transaction of the said Commission and from the application and administration of the laws and regulations pertaining to birds, game, fish and wildlife resources of the State and the sale of property used for said purposes. . . ." Ark. Const. amend. 35, § 8. These are the only monies that may be appropriated. Id.
With the foregoing in mind, I am constrained to conclude that the first revenue proposal would be constitutionally suspect unless it can be established that the contemplated revenues in fact arise by the operation and transaction of the Commission and from the application and administration of wildlife laws and regulations. See Amend. 35, § 8. We are uncertain, from a practical standpoint, how this designation could be made. While a conclusive determination would require consideration of the exact "activities" from which the revenues arise, it is my opinion that a credit of general revenues to the Game Protection Fund would fail to withstand scrutiny unless the revenue sources directly relate to the Commission's powers of management and control of game resources. This conclusion follows from the Supreme Court's admonition that the Commission's powers and authority are not unlimited. The court, in Farris, supra, stated that the Commission's rules and regulations must have a "real basis, which has a direct relationship with the purpose to conserve the wildlife resources of this state." 228 Ark. at 784. It is thus clear that the Commission could not itself levy license fees or assess penalties which are unreasonable or arbitrary, and not for regulatory purposes. See Wright v. Casey, supra (license fee on hunting dogs approved). The Legislature's lack of authority in this regard must, in my opinion, also follow. The Legislature would be doing indirectly what the Commission cannot do directly if revenues raised under laws unrelated to the regulation and conservation of the state's wildlife resources are allocated to the Game Protection Fund.
While it is true that our Constitution is not a grant, but a limitation of power (Black v. Cockrill, 239 Ark. 367,389 S.W.2d 881 (1965)), it must also be recognized that the Arkansas Supreme Court has viewed Amendment 35 as divesting the Legislature of all powers to conserve the wildlife resources of the state, "except those powers expressly reserved therein, being the power to make appropriations and to increase the annual resident hunting and fishing licenses." Farris,228 Ark. at 780. It is unlikely, following this view, that the Legislature would be deemed to have the reserved power to raise revenues from sources unrelated to the "control, management, restoration, conservation and regulation of the birds, fish and wildlife resources of the state. . . ." Ark. Const. amend. 35, § 8.
With regard to the second, fourth and fifth proposals, it is my opinion, based upon the foregoing, that the tax will be subject to challenge if levied on items that are unrelated to efforts in connection with the regulation and preservation of the state's wildlife resources. To the extent that laws and regulations have been promulgated in connection with these items, it may be successfully contended that this type of revenue source is contemplated under Amendment 35.[1] If there is no regulatory purpose, however, the presumption of constitutionality may, in my opinion, be overcome.
The third proposal (a fee or license in connection with an area of regulation involving the Commission) would, in my opinion, withstand scrutiny. Funds generated through such a regulatory fee or license would fall within the revenue sources contemplated under Amendment 35, assuming that the area of regulation is appropriate.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The yearly cap, under the fifth proposal, with additional funds going to the General Revenue Fund, would be problematic as to those items taxed for regulatory purposes. It may reasonably be concluded that proceeds derived for regulatory purposes cannot be diverted to purposes unrelated to wildlife management.